WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Alday, et al., | ) |
|     Plaintiffs, | ) CV 06-32 TUC DCB |
| v. | ) |
| Raytheon Company, a Delaware corporation, | ) **ORDER** |
|     Defendant. | ) |

Plaintiffs Frances Alday, et al, bring this action against Defendant Raytheon Company alleging two claims: 1) failure to comply with provisions of the Employment Retirement Income Security Act of 1974 ("ERISA") and 2) failure to comply with provisions of the Labor Management Relations Act ("LMRA"). Defendant seeks dismissal of both claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Defendant's motion on the ERISA claim is denied, and Defendant's motion on the LMRA claim is denied without prejudice to it being reurged after discovery as a Motion for Summary Judgment, pending further briefing addressing the jurisdiction of this Court over the LMRA claim.

## I. INTRODUCTION

Plaintiffs are retirees from Raytheon Company, or its predecessor, Hughes Missile Systems Company ("Hughes"), or a spouse or dependant of a retiree. These employees retired while they were between 55 and 65 years old, with three or more years

of continuous participation in the contributory option[1] of the Retirement Plan immediately preceding retirement, and had at least five years of continuous employment ("Early Retirees").  In 1993, Hughes and the International Association of Machinists and Aerospace Workers Local Old Pueblo Lodge No. 933 (the "Union") negotiated a collective bargaining agreement ("1993 CBA"), which detailed the welfare and pension benefits of employees and retirees.  For these Early Retirees, Hughes agreed to provide Comprehensive Medical Benefits (the "Benefits") at no charge until they attained age 65.  These benefits extended to the Plaintiffs' spouses and their dependents in a limited extent.  In 1996, Hughes and the Union negotiated a new CBA ("1996 CBA"), which left the benefit package for early retirees untouched.

In 1997, Hughes merged with Raytheon Missile Systems Company ("Raytheon") and in an Addendum Agreement, dated October 31, 1997, agreed to continue providing company-paid retiree medical coverage in accordance with the terms of the 1996 CBA.

In 1999, a new CBA ("1999 CBA") was negotiated between the Union and Raytheon, making minor changes to medical benefits for early retirees retiring after 2000.  In early 2003, Raytheon modified and replaced the Hughes Retiree Medical Plan with the Raytheon Health Benefits Plan (the "2003 Plan"), which provided that the Company had sole discretion to change the contribution amount, to amend the Plan, and to reduce or eliminate benefits pursuant to the provisions of the Plan.  In late 2003, the Union and Raytheon signed a new CBA ("2003 CBA"), which initiated payment for medical benefits for early retirees retiring after 2003 that were contributory participants of the Retirement Plan and restated the policy that non-contributory participants paid for their medical benefits.  The 2003 CBA did not mention the payment status of early retirees who retired after 1993, but before 2003 and were contributory participants of the

---

[1] It is undisputed that participants in the non-contributory plan option must pay for their medical benefits.

Retirement Plan.

Early in 2004, Raytheon issued a notice (the "Notice")[2] stating that when it purchased Hughes, it had agreed to continue to provide retiree medical coverage at no cost to eligible employees and retirees participating in the contributory portion of the Raytheon Retirement Plans for five years (until December 17, 2002). Effective July 1, 2004, Raytheon was changing the retiree medical contribution policy to one comparable to that offered to other Raytheon retirees, meaning that to continue retiree medical coverage, retirees had to begin paying a share of the cost of coverage and would receive a monthly bill. (D's MD, Ex. 4D).

This Court has jurisdiction pursuant to the judicial review provision of ERISA, 29 U.S.C. § 1132(e). ERISA enables health plan participants and beneficiaries to bring equitable relief actions under § 1132 (a)(3) and economic damage claims under § 1132 (a)(1)(B). This court also has jurisdiction pursuant to the judicial review provision of the LMRA, 29 U.S.C. §185.

## II. STANDARD OF REVIEW FOR ERISA AND LMRA CLAIMS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. On motions to dismiss brought pursuant to Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Associated General Contractors of America v. Metropolitan Water District of Southern California*, 159 F.3d 1178, 1181 (9th Cir. 1998) (citation and internal quotation marks omitted). A motion to dismiss should be granted if "it appears beyond

---

[2](Complaint at ¶ 16); (D's MD, Ex. 4D: "Important Information about Retiree Medical Changes Effective July 1, 2004 and Your Open Enrollment Package")

doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *SmileCare*, 88 F.3d at 783.  A complaint may be dismissed as a matter of law for either "lack of a cognizable theory" or "insufficient facts under a cognizable legal claim." *Id.* (citation and internal quotation marks omitted).

Plaintiffs contend that the inclusion of the documents submitted to this Court by Raytheon that are not central to the Complaint and are not relied on by Plaintiffs should not be used by this Court to rule on the Motion to Dismiss.

Rule 12(b) of the Federal Rules of Civil Procedure provides that if, on a motion to dismiss under Rule 12(b)(6), matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56.  However, if a complaint is accompanied by attached documents, the court deciding a motion to dismiss is not limited by allegations contained in the complaint; rather, attached documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994).  A collective bargaining agreement can properly be considered when determining whether to dismiss a complaint for failure to state a claim, if it was referred to in the complaint and if the agreement's authenticity is not at issue. *Stone v. Writer's Guild of America West, Inc.* 101 F.3d 1312, 1313-14 (9th Cir. 1996).

To the extent that the Plaintiffs referred to documents in the Complaint, the Court may  examine these documents without converting the Rule 12(b)(6) motion to a Rule 56 motion.  In the case at hand, the Plaintiffs have attached to the pleadings various excerpts of the 1993, 1996, 1999, and 2003 collective bargaining agreements ("CBAs"). (Complaint at Ex. 1-4).  Plaintiffs made reference to these CBAs in the pleadings.  In addition, Plaintiffs made reference to the 1993 Hughes Retiree Medical Plan, the 1999 Raytheon Health Benefit Plan and the Raytheon Retirement Guide for Participants in the

4

1  Raytheon Non-Bargaining and Bargaining Retirement Plans (the "Guide"). Furthermore,
2  Plaintiffs referred to the Notice Raytheon gave on July 1, 2004, which stated that the
3  company was changing the current retiree medical contribution policy for current and
4  retired employee members of the bargaining unit, including the Plaintiffs. Therefore, the
5  Court relies on these documents without converting the motion to dismiss to a motion for
6  summary judgement.

### III. DISCUSSION MOTION TO DISMISS ERISA CLAIM

#### A. Plaintiffs' Failure to Exhaust the Plan's Administrative Remedies

Defendant contends that 95 of the 98 Plaintiffs did not exhaust their ERISA administrative remedies and, therefore, these Plaintiffs do not have standing to sue under the ERISA statue. In addition, Defendant contends that this Court has no jurisdiction to review the dismissal decisions for the remaining three plaintiffs because the Medical Health Benefit Plan Administrator has "absolute discretion to construe and interpret any and all provisions of the Plan and the Benefit Programs, including, but not limited to, the discretion to resolve ambiguities, inconsistencies or omissions conclusively." (Defendant Motion to Dismiss (D's MD) at 7 (quoting the 2003 Plan)). Furthermore, because the Plan Administrator has absolute discretion, the Plan Administrator could have reversed the unfavorable decision issued to the first three Plaintiffs and pronounced a different decision for the remaining appealing Plaintiffs.

Although ERISA does not specifically require exhaustion of administrative claim procedures in the Plan, federal courts have concluded that they have the authority to enforce the exhaustion requirement in ERISA suits and that as a matter of sound policy should usually do so. *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980); *see also Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F. Supp. 518, 527 (N.D. Cal. 1977) (exhaustion of administrative remedies required prior to suit under ERISA). Exhaustion is not required in the following cases: denial of meaningful access

to the plans claim review procedure, *Medical Center-West, Inc. v. Cluett, Peabody & Co.*, 814 F. Supp. 1109, 1111 (N.D. Ga. 1993), collection of delinquent contributions due under a collective bargaining agreement, *Chicago Painters' & Decorators' Pension v. Juhrend*, 1998 U.S. Dist. LEXIS 10100 at *2 (N.D. Ill. September 2, 1988), interference with protected rights, *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984), and breach of fiduciary duties under ERISA. *Bartz v. Carter*, 709 F. Supp. 827, 828-29 (N.D. Ill. 1989).

A court will waive the exhaustion requirement where resort to internal administrative appeal procedures would be inadequate or futile. *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) (citing *Winterberger v. General Teamsters Auto Truck Drivers and Helpers Union Local 162*, 558 F.2d 923, 925 (9th Cir. 1977)). This futility exception is particularly appropriate where the past pattern of a plan administrator, as well as its position on the merits of a current matter in litigation, reveal that any further administrative review would provide no relief. *DePina v. General Dynamics Corp.*, 674 F. Supp. 46, 51 (D. Mass. 1987); B. Mezines, J. Stein, and J. Gruff, *Administrative Law* § 49.02(4) (1985). The claimant must demonstrate that the plan's position has become so fixed that an appeal would serve no purpose. *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 917 (3rd Cir. 1990). The plaintiffs must show that it is certain that their claim will be denied on appeal, not merely that they doubt that an appeal will result in a different decision. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998); *Ross v. Diversified Benefit Plans, Inc.*, 881 F. Supp. 331, 335 (N.D. Ill. 1995).

Here, Defendant notified Plaintiffs in early 2004 that they would no longer receive medical benefits at no charge, and effective July 1, 2004, they would be billed a premium for benefit coverage, with Raytheon contributing $256 per month. Upon receiving the Notice, Plaintiffs allege that approximately 200 retirees complained in some

way or another, arguing that they had a right to receive medical benefits from Raytheon through age 65 at no charge.

According to the Defendant, of the 100 Plaintiffs named here, 30 made initial claims to Raytheon regarding the termination of their benefits at no charge, but failed to administratively appeal Raytheon's denial. Sixty-five of the Plaintiffs failed to file any administrative claim whatsoever.  Only three Plaintiffs completed the entire administrative review process by appealing the denial to the Raytheon Benefits Appeals Committee, which affirmed the denial of these three Plaintiff's claims.

The Notice did not contain any information regarding the appellate procedures that the Defendant now asserts apply to bar Plaintiffs' ERISA claim for failure to exhaust administrative remedies.  Defendant has attached a letter to its Motion to Dismiss sent by a retiree complaining that the Collective Bargaining Agreement under which he retired entitled him to health plan coverage until age 65 with no premium charge and asking that his benefits be so reinstated.  (D's MD, Ex. 4C.)

In response to the complainant, the Defendant sent a letter explaining that it would "construe" his letter as a "claim under Section 6.1(Claims Procedures) of the Plan. (D's MD, Ex. 4B: Letter to Mincheff, dated July 27, 2004.)  Defendant explained that unlike claims for benefits under the Plan which are determined by the Claims Administrator for the particular program covering the claimant, the decision to "require participant contributions for you and similarly situated employees was made by Raytheon Company, the Plan Sponsor and consequently, it was more appropriate for Raytheon Company as the Plan Administrator to determine his request for reinstatement of no-cost coverage." *Id.* at 1.   Defendant denied the request, relying on the same arguments it makes here: no such vested rights existed under the Plan, which reserved to Raytheon the right to change medical benefits, and that the various CBAs provided that benefits would be administered in accordance with the Plan. *Id.* at 1-2. In keeping with its construction

of the complainant's letter as a "benefit claim," the Defendant referred him to the appellate procedures in the Plan for appealing to the Raytheon Benefits Appeals Committee. *Id.* at 3.

Based on Defendant's offers of proof, Plaintiffs might argue they were denied meaningful access to grievance procedures because the Notice failed to inform them that the administrative claims procedures in the Plan applied in the event a retiree sought to appeal the Notice. Such an argument would be supported by the Defendant's need to later "construe" the letter protesting the termination of benefits as a claim subject to the Plan's administrative claim procedures. Regardless of whether or not this case fits within this exception to the exhaustion requirement, the Court finds that the exhaustion requirement is waived here because the administrative claim procedures would have been inadequate and futile. Defendants denied the claims of all three employees who pursued the plan grievance procedure to its end, leaving no doubt that other similarly situated retirees' grievances would have been similarly rejected.

As explained by the Defendant, the administrative remedy procedures in the ERISA Plan pertain to all disputes involving all provisions of the Plan. (D's MD at 14-15). Arguably, Plaintiffs' allegation falls beyond the broad sweep of these administrative procedures because Plaintiff challenges <u>the inclusion</u> in the Plan of provisions allowing Defendant to terminate their "no cost" medical benefits. "Plaintiffs are challenging the substantive changes in the Plan itself, not an administrator's interpretation of existing Plan provisions." (Ps' Response at 14.) "An administrator has no power to determine whether Raytheon's changes to the Plan are lawful - it only has the power to interpret the Plan as it exists. Plaintiffs are not challenging the denial of benefits by the administrator of the Plan (in which case the Court could require exhaustion of administrative remedies); rather, they are challenging whether Raytheon had the legal authority to alter collectively bargained retiree healthcare benefits." *Id.* at 14-15.

"This is an inquiry that is governed by Section 301. If the changes were unlawful under the federal common law of Section 301, as Plaintiffs contend, they were unlawful under ERISA." *Id.* In other words, the ERISA claim is derivative of the Section 301 claim. (Plaintiff's Response at 15).

Federal courts have distinguished the difference between the *legality* and the *interpretation* of a benefit plan under ERISA. *Constantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994); *Zielinski v. Pabst Brewing Co.,* 360 F. Supp. 2d 908, 921 (E.D. Wis. 2005) ("The former is typically a question for administrative review while the latter is more likely a question for a court."). If Plaintiffs pursue the administrative process in hopes to remedy a legal issue, they need not exhaust their administrative remedies since they would be futile. *Constantino,* 13 F.3d at 975. The court reasoned that going through the administrative process for a remedy that could not be provided by the plan grievance process defeated the purposes of administrative exhaustion. *Id.*

Here, Plaintiffs argue that Defendant does not have the power to change the plan benefits, specifically, the "no charge" provision for retiree's medical benefits given them in the 1993, 1996, 1999 and 2003 CBAs. In other words, Plaintiffs challenge Defendant's inclusion in the Plan of a provision that was contrary to the alleged binding CBAs to provide medical benefits at no charge. This determination hinges on the collective bargaining agreements between the parties. Such a legal inquiry would be futile in the administrative process.

<u>B. Plaintiffs' Failure to Plead a Valid Claim under ERISA §502(a)(3)</u>

Defendant maintains that the Complaint fails to state a valid claim for relief under ERISA §502(a)(3), which provides injunctive relief to enforce ERISA or the terms of the plan. Defendant notes that the Complaint only addresses Plaintiffs' economic harm, merely seeking damages and not identifying any equitable relief. Defendant seeks to

9

1 dismiss the first count to the extent it seeks relief under this Court's injunctive powers,
2 pursuant to §502(a)(3), since none is pleaded.

3 Plaintiffs clarify their equitable relief position in the Response to Defendant's
4 Motion to Dismiss. Plaintiffs will seek equitable relief in the form of a preliminary
5 injunction to estop Raytheon from requiring Plaintiffs to make monthly contributions for
6 receipt of healthcare benefits. Such injunctive relief, whether or not Plaintiffs seek it as a
7 preliminary matter, satisfies the pleading requirements for a claim under §502(a)(3).[3]
8 Plaintiffs may amend the complaint to state such a claim. The Court will allow Plaintiffs
9 leave to amend the Complaint to properly and specifically allege the relief sought under
10 §502(a)(3) and §502(a)(1)(B).

### C. Plaintiff's Retiree Medical Benefits Did Not Vest

Defendant contends that Plan documents control the medical benefit rights for Plaintiffs rather than the CBAs. Utilizing ERISA case law, the Defendant contends that Plaintiffs have the burden of showing that the plan documents provide vesting of Plaintiffs' medical benefits in clear and express language. (D's MD at 9 (citations omitted)). *See Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) (ERISA presumption that welfare benefits do not vest unless expressly provided for in plan documents). Defendant states that the Plan documents actually show that the early retiree medical benefits do not vest. Defendant contends that the Plan documents reserved to Raytheon the absolute right to change, add, delete and/or terminate any benefits at will. Furthermore, the Defendant contends that the CBAs defer to the terms of the applicable Plan documents when it comes to defining medical benefits.

---

[3] 29 U.S.C. §1132(a)(3) authorizes beneficiaries on an employee welfare benefit plan to bring a civil action "(A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce ... the terms of the plan."

10

Plaintiffs contend that Plan documents do not control the conferral of their retiree medical benefits, but rather the CBAs dictate their retirement rights. "In other words, the ERISA claim is derivative of the Section 301 claim."[4] Plaintiffs rely on the language in the 1993 CBA expressly giving them benefits at no charge. Plaintiffs assert this entitlement extended beyond the term of the 1993 CBA because subsequent CBAs did not contradict or repeal it.

The Court finds that CBAs negotiated by unions and employers establish the contractual relationship between union members and employers. Unilateral changes to CBAs by the employer, union, or employees are invalid as contract modifications because of lack of mutuality. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1296 (6th Cir. 1991) ( explaining that to construe the Plan to allow the employer to terminate benefits of an employee-promisee, at will and without notice, is to invent a term which lacks mutuality of obligation, is illusory, and unenforceable). Employers can not unilaterally reserve the right to change the terms of a CBA and then adopt terms that conflict with rights granted under a CBA. *ASARCO v. USW*, 2005 U.S. Dist. LEXIS 208731 at *12 (D. Ariz. July 26, 2005) (citing *Armistead,* 944 F.2d at 1297). In other words, a reservation of rights clause in a plan document cannot affect contractually vested or bargained-for rights. *Id.*; *see also Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Company, Chemical Division*, 404 U.S. 157, 183 (1971) ("'Where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract' except upon (1) timely notice to the other party, (2) an offer to meet and confer 'for the purpose of negotiating a new contract or a contract containing the proposed modifications,' (3) timely notice to the Federal Mediation and Conciliation Service and comparable state or territorial agencies of the existence of a

---

[4]*Supra* at 10.

'dispute,' and (4) continuation 'in full force and effect [of] ... all the terms and conditions of the existing contract ... until [its] expiration date...'") (paraphrasing the National Labor Relations Act, 29 U.S.C.A. § 158(d)).

The Plan's language is subservient to the CBA. The Plan may not circumvent or extinguish benefit rights secured by a CBA.  To the extent Defendant's Motion to Dismiss makes such an argument, it is denied.[5]  Given the contractual nature of CBAs, language in the CBAs deferring to Plan documents only infers a derivative connection between the Plan and the CBA as to any rights and/or benefits secured by a CBA.  The dispositive issue in this case, whether or not these Plaintiff Early Retirees have an entitlement to medical benefits at no charge hinges on the provisions in the various CBAs.

## IV. DISCUSSION MOTION TO DISMISS SECTION 301 LMRA CLAIM

### A. Exhaustion Requirement

Generally, an employee who brings a benefit dispute grounded in a collective bargaining agreement must first exhaust his or her remedies under the collective bargaining agreement. *Mason v. Continental Group, Inc.* 763 F.2d 1219, 1222 (11th Cir. 1985).  There are, however, exemptions to this general rule of labor law, such as: a) where a union breaches a duty of fair representation, *Vaca v. Sipes*, 386 U.S. 171, 185 (1967) b); where resort to the CBA grievance procedure would be futile, *Glover v. St. Louis-San Francisco R. Co.,* 393 U.S. 324, 330 (1969); c) where grievance procedures have been repudiated, *Vaca*, 386 U.S. 171; d) where grievance procedures are not

---

[5]For example, Defendant contends that various sections of the plan documents and the SPD are inconsistent with vesting of medical benefits, as follows: a) provisions that show company payment of retiree benefits as a current rather than a vesting activity; b) "coordination of benefits" provisions in the plan are inconsistent with vesting; c) the plan contemplated the discontinuity of retiree medical benefits.  Vesting inconsistencies within the Plan can not, as a matter of law, defeat health benefits secured for employees by a CBA, but are relevant to reflect the parties' contractual intentions and the understanding of binding CBA requirements.

12

intended as exclusive remedies, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 657-58 (1965), or where the CBA did not through either language, intent or presumption, require exhaustion, *Anderson v. Alpha Portland Industries, Inc.*, 752 F.2d 1293, 1298-300 (8th Cir. 1985). When an employer repudiates the grievance procedures or when the union wrongfully refuses to process the grievance, the employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. *Schaub v. K&L Distributors*, 115 P.3d 555, 561 (Alaska 2005) *(*citing *Vaca*, 386 U.S. at 184-86).

   Exhaustion of the CBA is a jurisdictional consideration, so the Court raises it *sua sponte*. In the present case, the Defendant alleges that the Plaintiffs' claim for breach of the CBA is subject to the Plan's exhaustion requirement. Defendant blurs the distinction between the Plan and the CBA's grievance procedures. Standing to claim relief under Section 301 is a function of the exhaustion of the CBA's grievance requirements rather than the Plan's grievance requirements. Neither party addresses these requirements nor whether there is any basis for waiving them.

   Additionally, the Court requests briefing on the issue of the Union as a necessary party or a non-aligned party to the action before us, which may or may not affect the jurisdiction of this Court to hear the LMRA claim. *See Kinnunen v. American Motors Corp.*, 56 F.R.D. 102, 103 (E.D. Wis. 1972) (explaining that because the plaintiff is required to show she exhausted her bargaining remedies or that the union did not act in good faith, it is inappropriate to make either determination without the presence of the union); *Bradley v. Ford Motor Co.*, 417 F. Supp. 23, 25 (N.D. Ill. 1975) (explaining that union was a necessary party to the action because the Court needed to determine if the plaintiffs had exhausted their contractual remedies, which partly depended on whether or not the union had violated its duty of fair representation); *Nichols v. Frank*, 1990 WL

13

134539 at *2 (D. Or. Sept. 10, 1990) (joining a union as a non-aligned party to avoid the possibility of inconsistent obligations based upon any relief the court may grant).

## V. CONCLUSION

The Court denies Defendant's Motion to Dismiss as to the argument that Plaintiffs failed to exhaust the Plan administrative remedies.  While Defendant correctly notes that Plaintiffs failed to articulate any injunctive relief under ERISA § 502(a)(3), Plaintiffs shall have leave to amend the Complaint to state a claim for equitable relief.

Plaintiffs' ERISA claim is derivative and dependent upon the outcome of Plaintiffs' § 301 claim, which is subject to jurisdictional exhaustion requirements under the LMRA.  *Sua sponte*, this Court must satisfy itself of its jurisdiction to reach the merits of the case.  Pending this, Plaintiffs may have leave to amend the Complaint to properly state the ERISA § 502(a)(3) claim and to allege any jurisdictional exhaustion prerequisites, if necessary, to properly state the LMRA claim.  Pending any amendment, the Court will be in a better position to address the merits of the case after discovery is completed.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion to Dismiss (document #9) is DENIED.

**IT IS FURTHER ORDERED** that denial of the Motion to Dismiss the LMRA claim is without prejudice to Defendant's reurging the arguments in a motion for summary judgment after the close of discovery.

**IT IS FURTHER ORDERED** that plaintiffs have 20 days from the filing date of this Order to brief the jurisdictional issues, including identifying any relevant CBA grievance procedures, exhaustion or waiver of such procedures, and whether the Union is a necessary party.  Defendant may file a Response within 20 days of receiving a copy of

the Plaintiffs' brief, and Plaintiff may file a Reply within 10 days of receiving a copy of the Response.

**IT IS FURTHER ORDERED** that subsequent to affirmatively resolving all jurisdictional questions over the LMRA claim, Plaintiffs shall be granted leave to amend the Complaint to cure any jurisdictional deficiencies and to properly plead the § 502(a)(3) ERISA claim.

DATED this 27th day of July, 2006.

David C. Bury
United States District Judge

15