WO

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Frances Alday et al.,                                )
                                                     )
                    Plaintiffs,                      )
                                                     )          CV 06-32 TUC DCB
v.                                                   )
                                                     )          **O R D E R**
Raytheon Company, a Delaware corporation,            )
                    Defendant,                       )
_____)

     Plaintiffs allege that "Defendant bargained with the Union Local Lodge No. 933 for four consecutive Collective Bargaining Agreements (CBAs) spanning a period of over fourteen years (beginning in 1990 and ending in 2004) that retirees and their spouses would have company-paid health care coverage until age 65."[1]  (P's Response to Motion for Judgment on the Pleadings (Rule 12(c) Motion) at 6.)  Plaintiffs sue Defendants under the Employee Retirement Income Security Act (ERISA) and the Labor Management Relations Act (LMRA), challenging Defendant's decision that they must contribute toward the cost of their retirement healthcare benefits.  Plaintiffs allege this breached the CBAs in violation of the LMRA and that correspondingly modifying the healthcare benefit plans violated ERISA.  Plaintiffs seek reinstatement of their company-paid retirement benefits, damages for healthcare expenses they incurred, extra-contractual damages for mental and emotional distress, and punitive damages. Plaintiffs seek certification of this case as a class action.

     Defendant argues for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), because extra-contractual damages and punitive damages cannot be recovered under either ERISA or LMRA.  Defendant objects to the class definition proposed by the Plaintiffs, arguing

---

[1]Eligible dependants also received healthcare benefits under the CBAs.

that it must be narrowed to exclude individuals who released or waived any claims against Defendant and to exclude persons whose claims are based on retirement before July 1, 1994, and retirement after or on November 2, 2003. Furthermore, Defendant argues that membership in the class must be limited by express qualifying conditions in the CBAs for retirees, spouses, and dependants. Otherwise, there is no objection to certifying the class.

<u>Extra-contractual and punitive damages are not available under ERISA or LMRA.</u>

First, the Court notes that the First Amended Complaint seeks compensatory and punitive damages under ERISA, section 502(a)(1)(B), and LMRA, section 301(a), see (First Amended Complaint at ¶¶ 22 and 32), but does not allege mental or emotional distress. Plaintiffs, however, submit affidavits to support their Motion for Class Certification that allege in relation to each Plaintiff-representative that mental and emotional suffering was caused by the alleged breach of the CBAs and the ERISA violation. In response to Defendant's Rule 12(c) Motion, Plaintiffs argue that ERISA and the LMRA provide for punitive damages and extra-contractual damages for mental and emotional distress. (P's Response to D's Rule 12(c) Motion; P's Reply to D's Opposition to P's Motion for Class Certification at 10.)

Under ERISA, section 502(a)(1)(B), Plaintiffs may recover benefits due them and may sue to enforce their rights under a plan or to clarify their rights to future benefits under a plan. 29 U.S.C. § 1132(a)(1)(B). Extra-contractual damages are those that give a beneficiary more than he or she is entitled to receive under terms and provisions of the plan. *Zielinski v. Pabst Brewing Comp.*, 360 F. Supp. 2d 908, 923 n. 13 (Wisc. 2005). Such damages should not be confused with damages which are or are not recoverable in a contract action. *Id.*

There are six carefully integrated civil enforcement provisions found in section 502(a) of ERISA, which provide "strong evidence" that Congress did not intend to authorize other remedies. Congress has repeatedly emphasized that the purpose of ERISA is to protect contractually defined plan benefits. The stark absence in the statute itself and in its legislative history of any reference to recovery of extra-contractual damages led the Supreme Court to conclude that ERISA bars extra-contractual claims. *Massachusetts Life Insurance Co. v. Russell*, 473 U.S. 134, 146-148 (1985).

The Supreme Court has repeatedly rejected claims for punitive and extra-contractual damages under ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004) (finding state tort claims preempted by ERISA because to find otherwise would be to allow parties to evade the pre-emptive scope of the narrowly tailored ERISA remedies). Supreme Court cases addressing the pre-emptive effect of ERISA are based on the limited remedies available under ERISA, which are inherent in the "careful balancing" between ensuring fair and prompt enforcement of rights under a plan and encouraging the creation of such plans. *Id.* ((citing *Pilot Life Insur. Co. v. Dedeaux*, 481 U.S. 41 (1987) (finding ERISA preemption of tortious breach of contract claim seeking compensatory and punitive damages); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990) (finding ERISA preemption of breach of contract claim involving punitive damages and damages for mental anguish); *Metropolitan Life Insur. Co. v. Taylor*, 481 U.S. 58, (1987) (finding ERISA preemption of claim for mental anguish caused by breach of contract)). The plaintiffs in all three cases sought remedies beyond those authorized under ERISA. *Id.*

In *Bast v. Prudential Insur. Co.*, 150 F.3d 1003, 1009 (9th Cir. 1998), the Ninth Circuit Court of Appeals held that loss of plaintiff's chance of survival, her suit for out of pocket costs, loss of income, loss of consortium, and emotional distress were not compensable under ERISA. *See also*, *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (an action "which seeks non-ERISA damages for what are essentially claim processing causes of action, clearly falls under the § 1132 preemption ..."); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) (breach of contract, fraud, and tortious breach of the covenant of good faith and fair dealing preempted by ERISA).

In the ninth circuit, a participant may file a civil action "to recover benefits due him under the terms of his plan," *Bast*, 150 F.3d at 1008 (quoting 29 U.S.C. 1132(a)(1)(B)), "[e]xtracontractual, compensatory and punitive damages are not available under ERISA." *Id.* at 1009 (citing *Russell*, 473 U.S. 134); *see also, Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306-07 (9th Cir. 1986) (holding that punitive damages are not allowed under ERISA. Accordingly, Plaintiffs' claims under ERISA for punitive damages and

damages for mental and emotional distress are dismissed as a matter of law, pursuant to Fed. R. Civ. P.12(c).  *Cf.*, *Pachuta v. Unumprovident Corp*, 242 F. Supp. 2d 752, 764 (Hawaii 2002) (granting summary judgment as to claims for extra-contractual, compensatory and punitive damages); *Starr v. MGM Mirage*, 2006 WL 3290299 *3 (Nevada 2006) (dismissing claim for punitive damages); *Baumberger v. Hollywood Entertainment Corporation,* 2006 WL 3513648 (Or. 2006) (same).

Plaintiffs concede that under the LMRA, "'the general rule, [], is that punitive damages are not allowed in actions for breach of contract brought under section 301,'" (P's Response at 2 (quoting *Moore v. Local Union 569 of the IBEW*, 989 F.2d 1534, 1542 (9th Cir. 1993), "and 'ordinarily, an award that exceeds the monetary loss which an injured party suffered as a result of a contract breach is considered punitive' and thus improper."  *Id.* (quoting *Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas,* 679 F.2d 789, 794 (9th Cir. 1992)).

These breach of labor contract cases are in keeping with the general rule that mental suffering is not compensation for breach of a contract.  24 Williston on Contracts § 64:7 (4th ed. 2007) ((citing *Farmers Insur. Exchange v. Henderson*, 313 P.2d 404, 409 (Ariz. 1957); Restatement (Second) of Contracts § 353 (damages for emotional distress are not ordinarily allowed, even if they are foreseeable as they are often particularly difficult to establish and to measure.))  There are of course exceptions to the general rule, most of which have adopted the principle set forth in the Restatement (Second) of Contracts that allows recovery for mental suffering or emotional disturbance only where the breach also causes bodily harm or the nature of the contract is such that a breach of it is particularly likely to result in serious emotional disturbance.  *Id.* (citing Restatement (Second) of Contracts § 353).  "Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death."  *Id.*

Likewise, Plaintiffs argue, "that in very limited circumstances a court may award punitive damages under Section 301."  (P's Response at 2-3 (citations omitted)).  Plaintiffs argue that damages for emotional distress are available under the LMRA because the underlying

CBAs dealt with matters of "obvious mental concern and solicitude for retirees such as maintenance of health and vision care during their declining years when they are no longer actively earning an income." *Id.* (quoting *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Federal Forge, Inc.*, 583 F. Supp. 1350, 1356 (Mich. 1984)). Plaintiffs argue that it can reasonably be said that matters of such concern were within the contemplation of the parties when executing the CBAs covering these retirement benefits. *Id.* at 5.

Plaintiffs argue that "[p]unitive and extra-contractual damages *are* appropriate in this case given the scope of Raytheon's 'persistent misconduct' and 'salutary effect' that would be created generally within the defense industry, and specifically at Arizona' largest defense contractor, by deterring such conduct in the future." Plaintiffs refer to conduct by Raytheon in Texas similar to that allegedly taken by Raytheon in this case and to another case in Arizona where Raytheon took similar action against non-bargaining retirees. *Id.* at 4 (citing *Holodnak v. Avco Corporation, Avco-Lycoming Division, Stratford Connecticut*, 514 F.2d 285, 291 (2d Cir.1975) (finding employee not entitled to punitive damages in section 301 suit against employer where employee made no showing that such an award would deter future violations by the employer)), *but see, Republic Steel Corporation v. NLRB*, 311 U.S. 7, 12 (1940) (discussing award of punitive damages under the NLRA to deter violations of the Act as proving too much because this would authorize an entire system of punishments if the nature of the Act is remedial).

When employees sue their union, the United States Supreme Court has decidedly held that punitive damages are not available for breach of the duty of fair representation. *Merk v. Jewel Food Stores*, 945 F.2d 889, 897 (7th Cir. 1991) (citing *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42 (1979)). Plaintiff's reliance on *Merk* is misplaced because the court concluded that punitive damages were <u>not</u> available for claims that an employer made unilateral wage cuts in violation of a CBA, even where the union made a secret agreement with the employer to reopen the CBA to allow for the wage cut. The court explained that if punitive damages were not available against the union for breach of the duty of fair

representation because astronomical damages might threaten the goal of harmonious resolution of labor disputes which are at the core of national labor policy, then surely punitive damages were not available against the employer for breach of the labor contract. *Id; see also, Nitzsche v. Stein, Inc.*, 797 F.Supp. 595, 597 -598 (Ohio,1992) (same).   In the court's opinion the case was "uncomplicated by evidence of fraud or other tortious misconduct," *Merk*, 945 F.2d at 899; it was a simple breach of contract claim against the employer.   The court dismissed plaintiffs' punitive damage claim. *Id.*

The court in *Merk* relied on *Foust*, which involved a claim under the Railroad Labor Act (RLA), but it and the National Labor Relations Act (NLRA) and the LMRA are all labor statutes that are all essentially remedial in nature, rather than punitive.   *Foust*, 442 U.S. at 52. Likewise, the dangers and uncertainties of punitive damages referred to by the Supreme Court in *Foust* exist equally in the context of the NLRA and the LMRA.

In a case for breach of a collective bargaining agreement,  the award of compensatory damages depends on "a causal relationship between the company's violation of the agreement and the loss claimed by the employee." *Howard P. Foley v. IBEW, Local 639*, 789 F.2d 1421, 1423 (9th Cir. 1986) *overruled on other grounds by Pullman Power Prods. Corp. v. Local 403*, 856 F.2d 1211, 1212 (9th cir. 1988).   In such a case, any award exceeding the monetary loss that the injured party suffered as a causal result of the contract breach is considered punitive.   *Desert Palace*, 679 F.2d at 794. Consequently, punitive damages and compensatory damages for mental and emotional distress are "not usually" appropriate in breach of labor contract cases. *Hotel and Restaurant Employees and Bartenders International Union, AFL-CIO v. Michelson's Food Services, Inc.*, 545 F.2d 1248, 1254 (9th Cir.1976), *Williams v. Pacific Maritime Assn.*, 421 F.2d 1287, 1289 (9th Cir. 1970).

Nevertheless, in the ninth circuit there is some precedent for awarding damages for mental and emotional distress.   *See: Bloom v. Int'l Bhd. of Teamsters, Local 468*, 752 F.2d 1312, 1315 (9th Cir. 1984) (describing extreme and outrageous union conduct of subjecting plaintiff to "constant chanting, jeering, and gesturing, a daily rain of nuts, bolts, and screws,

intentional cigarette burns, vandalism of cars and lockers and vulgarities about his wife.") (relying on facts described in *Richardson v. Communications Workers of America*, 443 F.2d 974, 983 n. 12 (8th Cir. 1971)).  While a matter of first impression in the ninth circuit, there is a line of cases denying claims for mental distress in hybrid ERISA/LMRA cases because this would allow an end-run around ERISA's exclusive statutory remedies.  *Zielinski v. Pabst Brewing Co., Inc.*, 360 F. Supp. 2d 908, 924 (Wisc. 2005) (explaining that while a minority of courts may have allowed emotional distress damages, the majority have not: *United Steelworkers of America, AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1509-10 (11th Cir.1988); *Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522, 1528 (11th Cir.); *LaForest v. Honeywell Int'l, Inc.*, 2004 WL 1925490 at *9 (W.D.N.Y. Aug.27, 2004); *Gilbert v. Doehler-Jarvis, Inc.*, 137 F.Supp.2d 916, 918-19 (N.D.Ohio 2001), *vacated as moot on other grounds*; *Ragan v. Navistar Int'l Transp. Corp.*, 1989 WL 117486 at *2 (D.Kan. Sept.20, 1989); *but see Reaxam Inc. v. United Steel Workers of America*, 2005 WL 3803362 (Minn. 2005) (explaining that Congress adopted the saving clause in ERISA explicitly stating it does not preempt federal laws, intentionally creating anomaly that union members and retirees have a right to a jury trial on claims concerning health and welfare benefits, without providing a similar right to nonunion employees).

Fortunately, this Court does not need to decide the question as a matter of first impression because Plaintiffs fail to allege facts to support either a claim for punitive damages or mental and emotional distress.  There is no legal support for awarding such damages on facts similar to those in this case, except for *Federal Forge, Inc.,* where the court held that CBA provisions involving retirement healthcare benefits are contractual agreements "which by their very nature, so plainly involve the emotions of the plaintiff that liability for mental distress was or could have been within the contemplation of the parties when it was executed."  Almost all retirement benefits can be similarly described.  Almost all healthcare benefits can be similarly described.  *Federal Forge* reaches beyond the limited scope of recovery for mental distress envisioned by the Restatement of Contracts.  *See* Restatement (Second) of Contracts, § 353, comment and illustrations (loss of money is often disturbing, especially if it causes

impoverishment or bankruptcy, and may by chance cause severe emotional disturbance, but the contract must be one where there is a "particularly likely" risk of emotional disturbance. *See Brooks v. Hickman*, 570 F. Supp. 619, 620 (Pa. 1983) finding no damages for breach of contract causing loss of a nest egg). *Federal Forge* also conflicts with the notion that employment benefits are actual compensation that arises as a quid pro quo in the employment arrangement. *Lloyd v. Wyoming Valley Health Care System, Inc.,* 994 F.Supp. 288, 291 (M.D.Pa.1998).

Allegations in the First Amended Complaint do not allege extreme and outrageous conduct such as that relied on in *Richardson v. Communications Workers of America*, 443 F.2d 974, 983 n. 12 (8th Cir. 1971) to hold the union liable for mental and emotional distress caused when it subjected a plaintiff to "'constant chanting, jeering, and gesturing, a daily rain of nuts, bolts, and screws, intentional cigarette burns, vandalism of cars and lockers and vulgarities about his wife.'"

The Court finds that the are no facts or law to support Plaintiff's claims for punitive damages and for extra-contractual damages for mental and emotional distress. The Court grants Defendant's Motion for Judgment on the Pleadings, Fed. R. Civ. P. 12(c), because it appears that Defendant is entitled to judgment as a matter of law. *Geraci v Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003).

<u>First Amended Motion for Class Certification</u>

A.   <u>The class should exclude persons who released or waived their claims.</u>

Defendant argues that some employees who were eligible for coverage under the Plan, waived coverage for various reasons, such as spouses who declined coverage because they were covered under some other plan. (D's Objection at 2.) Defendant argues that in exchange for early retirement packages, other employees executed Separation and Release Agreements "which included, without limitation, 'claims arising under the applicable collective bargaining agreement.'" *Id.* at 3 (citing Ex. A-1: Separation and General Release Agreement signed by Class-Representative Claire L'Armee on December 23, 1998.) Defendant argues that the class should not include employees who either waived their coverage or released their claims.

In the event the Court decides to include these individuals in the class, the Defendant requests leave to Amend its Answer to include an affirmative defense of release and counterclaims where appropriate. (*Id.* at 3.)

Plaintiff does not dispute Defendant's challenge to employees that waived coverage under the Plan so such retirees, there spouses, or their dependants shall be excluded. Plaintiff does, however object to Defendant's assertion that some employees released their claims.

The release relied on by Defendant is in pertinent part, as follows:

> In exchange for supplemental benefits as set forth in the Voluntary Supplemental Separation Plan (VSSP), Employee does hereby release and forever discharge [Defendant] . . . from any and all claims, litigation, demands and causes of action, known or unknown, fixed or contingent, which Employee may have or claim to have against [Defendants] arising from or connected with Employee's employment by, or termination from Raytheon, and does hereby covenant not to file a lawsuit to assert such claims. This includes but is not limited to claims *arising under the applicable collective bargaining agreement*, if any , or federal, state or local laws prohibiting employment discrimination or claims growing out of any legal restrictions on Raytheon's right to terminate its employees (including claims under the Age Discrimination in Employment act (ADEA).

(D's Objection, Ex. A-1: Separation and General Release Agreement.)

The employees signing this release agreed to not file a lawsuit to assert claims "arising from or connected with Employee's employment by, or termination from Raytheon," including such claims arising under the CBAs, federal, state or local laws prohibiting employment discrimination or claims growing out of any legal restrictions on Raytheon's right to terminate its employees (including the ADEA). The Court finds that the language releasing claims employees "may have or claim to have" was written in the present tense and did not reach future, actionable, conduct by the Defendant. Furthermore, the release was limited to claims related to employment by Raytheon or Raytheon's termination of that employment. The Court finds that this release does not reach claims against Raytheon accrued subsequent to the execution of the Release Agreements. Especially, the release does not reach these Plaintiffs' claims, which relate to Raytheon's administration of the Plan and termination in company-paid healthcare benefits and not their employment by or termination by Raytheon. Because the

1   Court finds this argument lacks merit, there is no basis for Defendant to amend its Answer to

2   add these arguments as affirmative defenses or counterclaims.

3   B.   The class should exclude persons who retired before July 1, 1994 or after November 2,
        2003.

4

5         Plaintiffs have included in their proposed class definition employees, spouses of

6   employees, and dependants of employees, who retired under CBAs in existence prior to July

7   1, 2004, including CBAs that became effective in 1990, 1993, 1996, and 1999.  Defendant

8   objects to the inclusion of the 1990 CBA.

9         First , the First Amended Complaint did not allege any rights under the CBA, effective

10  in 1990.  It only describes company paid retiree medical coverage granted in CBAs effective

11  for 1993, 1996, and 1999.  Second, the CBAs provided benefits for retirees who were "at least

12  55 but less than age 65" when they retired.  Defendant calculates that anyone who retired at age

13  55 under the 1990 CBA or the 1993 CBA would have aged out of coverage by the time the

14  2004 changes were implemented.  In other words, persons who retired before July 1, 1994

15  would have turned 65 before July 1, 2004, when the contested changes to Raytheon's retiree

16  healthcare plan took effect.  Defendant asserts that the class definition should exclude all

17  persons who retired prior to July 1, 1994, and their spouses and dependents.

18        Plaintiffs admit that the mathematical calculations are correct for retirees, but not for

19  spouses and dependents.  Spouses remained eligible until they attained the age of 65 and

20  dependent children remained eligible for coverage until the age of 21 or 25, if attending college.

21  Plaintiffs give several examples to prove their point that while retirees would have aged out of

22  the class, some spouses and dependants of retirees, retiring before July 1, 1994, would remain.

23  The Court is not persuaded that the beginning time period, July 1, 1994, proposed by Defendant

24  serves to clarify or narrow the class definition.

25        Similarly, the Court is not persuaded that there is any benefit to setting an end period for

26  the class.  Defendant argues that the class should exclude persons who retired on or after

27  November 2, 2003.  Defendant submits that the changes in healthcare benefits challenged by

28

the Plaintiffs occurred in the 2003 CBA, effective November 2, 2003, Therefore, persons retiring after November 2, 2003, should be excluded from the class. This end date conflicts with the date the premium changes were implemented: July 1, 2004. This confusion seems pointless, given the simplicity of connecting class membership to the CBAs at issue in the case.

The Court rejects setting a beginning and ending time period as part of the class definition. These dates seem to only confuse the definition, which is more accurately described by the CBA which covered the employee's retirement. The class definition should be limited to retirees, spouses of retirees, and eligible dependents of retirees, "who retired under collective bargaining agreements in existence prior to July 1, 2004, effective in 1993, 1996, and 1999."

The Court will not approve a class definition broader than the allegations in the First Amended Complaint. Unless the First Amended Complaint is amended to allege a violation of the 1990 CBA, the proposed class is limited to those who retired under the CBAs, effective in 1993, 1996, and 1999.

C.   The class must be defined consistent with section D of the CBAs.

Both parties agree that any certified class must take into account the CBAs express restrictions on coverage, all of which are contained in section D of the CBAs. The Court has reviewed the definitions of the class proposed by both Plaintiffs and Defendant. The Plaintiffs' proposed definition contains persons retiring under the 1990 CBA and fails to include the section D limitations. The Defendant's proposed definition contains the beginning and end dates, which this Court has concluded will only confuse matters. In light of the rulings by the Court made here, the parties should work together to revise the class definition in accordance with the directives of the Court. The parties should take care to draft a clear and concise class definition.

Class Certification

Given the parties' presentation to the Court of a class defined as described by the Court in this Order, it shall be certified. The Individual Plaintiffs and Proposed Class Representatives

are approved. It is undisputed that the prerequisites for a class action exist as provided for in Fed. R. Civ. P.23(a):

> One or more members of a class may sue or be sued as representative Parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to all of the above prerequisites being met in this case, it is undisputed that the class may be certified under Rule 23(b)(1) and (2).

Under Rule 23(b)(1) the class is certified because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner. *John Blair Communications, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan*, 26 F.3d 360, 370 (2nd Cir. 1994). Rule 23(b)(1)(A)[2] comes into play when a party is obligated by law to treat the members of a class in a like manner. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

The test for certifying the class under Rule 23(b)(2) is also met here. It is undisputed that the Defendant acted or refused to act on grounds applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole. *See Davis v. Weir*, 497 F.2d 139 (5th Cir. 1974) (explaining that the test hinges on whether Defendant's conduct is applicable to the class as a whole). Here, the primary relief sought is declaratory and injunctive, with any monetary relief, such as reimbursement for healthcare

/////

/////

/////

/////

---

[2]Rule 23(b)(1)(A) provides for a class action if prosecution of separate actions would create a risk of: "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."

expenses incurred, being secondary to and dependent upon a common declaratory judgment and final injunctive relief.  (P's Motion for Certification at 16.)

**Accordingly,**

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings (document 68) is GRANTED.  Plaintiffs' claims for punitive damages and claims for extra-contractual damages are dismissed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Certify the Class (document 63) is GRANTED.  Within 20 days of the filing date of this Order, the parties shall jointly file the class definition, pursuant to the directives of this Court.  In the event the parties are unable to jointly file the definition, the Plaintiffs shall file the proposed definition.  Defendants shall have 10 days to respond.  There shall be no Reply unless requested by the Court.

DATED this 4th day of January, 2008.

David C. Bury
United States District Judge