Robert Gregory, Bar No. 021805
**LAW OFFICE OF ROBERT M. GREGORY, P.C.**
1820 E. Ray Road, Suite C-2
Chandler, Arizona 85225
Telephone: (480) 839-4711
Facsimile: (480) 452-1753
Robert.gregory@azbar.org

*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARK ARGRAVES; RONALD GEUDER; CLARE L'ARMEE; DAVID LILLIE, on behalf of themselves and a class of persons similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>RAYTHEON COMPANY, a Delaware corporation;<br><br>Defendant | Case No. 06-cv-0032 TUC-DCB<br><br>**PLAINTIFFS' MOTION FOR APPROVAL OF CLASS ACTION FINAL SETTLEMENT AGREEMENT**<br><br>(Honorable David C. Bury) |

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Order of this Court acknowledging the tentative Class Action Settlement Agreement ("Settlement" or "Agreement"), which Settlement is dated January 22, 2013, and in accordance with the provisions of the Final Settlement Agreement ("Final Settlement"), attached as an exhibit hereto, Plaintiffs respectfully request that the Court grant final approval of the Final Settlement and enter the proposed Order Approving Final Settlement Agreement and Final Class Action Judgment filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs and Class Counsel believe that the Final Settlement provides substantial benefits to all eligible members of the Settlement Class. The Agreement removes the risk of further delay in the resolution of this matter and provides

benefits to all such Settlement Class[1] members in this vigorously litigated complex ERISA case. For the reasons explained herein, Plaintiffs request that the Court grant their motion for final approval of the Final Settlement and the Agreement.

## BACKGROUND

Plaintiffs commenced the litigation on January 18, 2006 alleging violations of ERISA and the Labor Management Relations Act ("LMRA") and Collective Bargaining Agreements that were effective in 1990, 1993, 1996, and 1999. Defendant moved to dismiss Plaintiffs' Complaint, which motion was denied. Plaintiffs moved for class certification, and the Court certified the matter as a class action on January 4, 2008 (Dkt. 83.)  After extensive discovery, the parties both moved for summary judgment.  On August 5, 2008, the Court granted Plaintiffs' motion for summary judgment, and denied Defendant's motion for summary judgment (Dkt. 125), and entered judgment in favor of Plaintiffs. (Dkt. 126.)

After appeal to the Ninth Circuit Court of Appeals, the Ninth Circuit affirmed the District Court's judgment on May 21, 2012, and then again on September 25, 2012.

As part of a mediation before the Honorable Bruce Macdonald, the parties entered into a preliminary settlement agreement on January 22, 2013.  Pursuant to the terms of the preliminary settlement agreement, Settlement Class members will be reimbursed for premiums they paid, and subject to resolution of fifteen (15) disputed class members, Defendant will not oppose a motion for attorneys' fees up to $1,200,000.00, Defendant will pay administrative fees in the amount of $50,000.00, eligible retirees and/or dependents who have not aged out will be retained in the Raytheon Retiree Health Benefits Plan, and the Settlement Class members will hold Defendant harmless and release any and all claims arising from

---

[1] The Settlement Class is defined as those persons who fall within the definition of "Class," as set forth in the attached final Settlement Agreement.

or related to the litigation. The parties agreed that any disagreements as to the disputed class members would be heard by Magistrate Judge Bruce Macdonald on February 20, 2013.

The parties subsequently reached an agreement on the identity and damages of each Settlement Class member, and Judge Macdonald issued an Order acknowledging the preliminary settlement agreement on February 25, 2013. (Dkt. 191.) Under the Final Settlement Payment List, the Settlement Class members are to receive reimbursement for premiums paid to Raytheon in the amount of $2,003,567.10, and post-judgment interest in the amount of $215,287.16. (Dkt. 192.)

The briefing in this case – both pre-judgment in District Court and post-judgment in the Ninth Circuit – has been extensive. There were 157 docket entries prior to briefing commencing in the Ninth Circuit. This Court has rendered numerous decisions, including three published opinions: an Order denying Defendant's Motion to Dismiss (Dkt. 17); an Order granting Plaintiffs' Amended Motion to Certify Class and Granting Defendant's Motion for Judgment on the Pleadings (Dkt. 83); and an Order granting Plaintiffs' Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment (Dkt. 125). Briefing before the Ninth Circuit was likewise extensive. Plaintiffs filed an opening and reply brief in support of its Cross Appeal, a response brief in opposition to Defendant's opening brief, a response brief to Defendant's first Petition for Rehearing, a response brief to Defendant's second Petition for Rehearing, and a response brief to Defendant's Motion to Stay the Mandate. The Ninth Circuit has rendered three published decisions in this matter (one of which was withdrawn).

Class Counsel vigorously litigated this case in both District Court and in the Ninth Circuit. Class Counsel undertook or defended eight depositions, and propounded and received numerous discovery requests. Class Counsel reviewed and analyzed thousands of pages of documents that were produced by Defendants. Plaintiffs successfully defended a motion to dismiss the case prior to the

commencement of discovery (Dkt. 15), made a motion to certify the matter as a class action (Dkt. 38), defended against Defendant's motion for summary judgment (Dkt. 113), and made a motion for summary judgment (Dkt. 106.) Plaintiffs also successfully defended against Defendant's post-judgment Motion to Stay Enforcement of Judgment (Doc. 137), which Motion the Court denied. (Dkt. 149.) Class Counsel has spent hundreds of hours preparing for and having oral argument before the Ninth Circuit held in February 2010 and May 2011. Class Counsel has also spent hundreds of hours working with leaders within the Union who had specific knowledge of the CBAs and negotiations between the Union and Hughes or Raytheon from 1990 to 2003. This case involved complex benefits and damages analysis covering a period of more than 15 years. Class Counsel has spent enormous amounts of time evaluating information submitted by surviving spouses and estate representative of deceased Participants and Beneficiaries and responding to inquiries from class members.

The outcome after over seven years of litigation is an excellent result for the class members. This Court's Order, dated August 5, 2008, wherein the Court granted Plaintiffs' Motion for Summary Judgment and directed Raytheon to "restore retiree health care benefits to the levels that existed prior to July 1, 2004, compensate class members for premiums that they paid since July 1, 2004," and permanently enjoined Raytheon from thereafter eliminating or reducing retiree health care benefits for the class members contrary to the CBAs, was affirmed by the Ninth Circuit Court of Appeals on September 7, 2010, and then again on May 21, 2012, and a third time on August 27, 2012. Plaintiffs submit that the Final Settlement is fair and equitable and in the best interests of all Settlement Class members.

**I.     DESCRIPTION OF THE FINAL SETTLEMENT AGREEMENT**

The proposed Final Settlement Agreement is fair, reasonable and adequate for the members of the Settlement Class. The principal terms of the Final Settlement Agreement are summarized below:

**A.     Scope:**  The Final Settlement Agreement will settle all claims of the Settlement Class members;

**B.     Settlement Consideration:**  When the Final Settlement Agreement is approved, Settlement Class Members will be reimbursed all premiums they have paid for Raytheon health care benefits from July 1, 2004 to the date of compilation of the Final Payment List.  Settlement Class members who meet the eligibility requirements, as set forth in the Settlement Agreement, will be retained in the Raytheon Retiree Health Benefits Plan.  In the Final Fee Application, Class Counsel seeks approval from the Court for an award of $1,200,000 in attorneys' fees, and for $50,000 in administrative costs.

**C.     Plan of Allocation:**  The Final Settlement Amount of $3,468,854.26 is to be allocated and paid as follows:

**1.     Fee Award.**  The amount of the fee award has been agreed upon by the parties.  Plaintiffs have filed a Final Motion for Award of Attorneys' Fees in the amount of $1,200,000 in attorneys' fees and $50,000 in administrative fees.  Raytheon has agreed not to oppose a request for fees in these amounts.

**2.     Additional Retirement Benefits.**  After allocation of the attorneys' fees and administrative fees, the entire balance remaining from the $3,468,854.26 will be distributed to the Settlement Class members, to be distributed in accordance with the Final Settlement Payment List that provides reimbursement of premiums paid by each Settlement Class member and post-judgment interest calculated from the date of judgment in this matter on August 5, 2008.  Pursuant to the terms of the Settlement Agreement, class members meeting the eligibility requirements will be retained in the Raytheon Retiree Health Benefits Plan.

If the Final Motion for Award of attorneys' fees and administrative fees is approved and if the Settlement Agreement achieves final approval, the Settlement Class members will receive 100% of the amount of premiums that they have paid to Raytheon since July 1, 2004, plus an additional allocation for post-judgment interest

calculated at 2.3%, the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment (August 5, 2008).

The amounts calculated and set forth on the Final Settlement Payment List are final, binding and nonappealable as to all persons.

**3.     Released Claims.**  Upon Final Approval and as set forth in the Settlement Agreement, the Named Plaintiffs and each Settlement Class member will be deemed to have forever released and discharged the Released Parties from the Released Claims and from the Unknown Claims.

**Notice to Class Members.**  The parties have made extensive searches to identify all Settlement Class members.  These search methods included the identification of all retirees who were members of IAMAW Local 933 who retired under either the 1990, 1993, 1996 or 1999 Collective Bargaining Agreements, and obtaining a report from Defendant identifying all retirees who made payments to the Raytheon Benefits Center on or after July 1, 2004 who were members of IAMAW Local 933. Additionally, letters have been sent to each Settlement Class members during the pendency of the case, and the Class Representatives and Class Counsel have contacted and spoken to each Settlement Class member or, in the event a Settlement Class member was deceased, to that person's eligible spouse or dependent. A notice to all Settlement Class members has been prepared by Class Counsel and is submitted herewith for the Court's approval. (Exh. X.)

**II.     THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e)**

The Court has wide discretion in making the final determination as to whether to finally approve a proposed settlement. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *In re Mego Financial Corp. Securities Lit. v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Courts have consistently held that the function of the court reviewing a settlement is to determine whether the proposed settlement, taken as a whole, is fundamentally fair, adequate, and reasonable, not to rewrite the settlement agreement or to resolve issues intentionally left unresolved by the parties. *Hanlon v.*

6

*Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). In evaluating whether to provide final approval to a settlement, the courts generally consider the same eight factors in determining whether a settlement is fundamentally fair, reasonable and adequate:

> (1) the strength of the plaintiffs' case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed, and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

*See, e.g., Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003) (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)); *Mego Financial Corp.*, 213 F.3d at 458; *Hanlon*, 150 F.3d at 1026; *Draney v Wilson, Morton, Assaf & McElligott*, Civ. 79-1029, 1985 WL 5820, *1 (D. Ariz. Sept. 30, 1985). As set forth in the Parties' motion for preliminary approval of the Settlement and as summarized herein, the Settlement is a fair, reasonable and adequate result.

### A. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports the Final Settlement

Plaintiffs prevailed on summary judgment in District Court, which ruling was affirmed on three occasions by the Ninth Circuit: initially, in September 2010, which opinion was vacated after Defendant filed a petition for rehearing (which was granted), and then affirmed on May 21, 2012, which was finally amended on August 27, 2012. Defendant's motion to stay the mandate was denied, and Defendant elected not to file a petition for certiorari to the United States Supreme Court. The matter having been fully adjudicated, the Defendant cannot contest the

District Court's judgment issued August 5, 2008. Defendant disagreed with the amount of attorneys' fees claimed in Class Counsel's application for attorneys' fees. Because Defendant has insisted on a concurrent settlement of the Settlement Class members' claims and attorneys' fees, and given that Defendant is prepared to reimburse Settlement Class members the full extent of their damages, Class Counsel necessarily negotiated his fees down (from his billing fee statement in excess of $2.9 million) in order to secure a settlement rather than litigate his fee application to the detriment of the Settlement Class. If the parties had not reached a concurrent settlement of the Settlement Class claims and attorneys' fees, a substantial amount of work would need to be done, including the completion of motion practice and a potential trial. Moreover, given the complexity of the issues remaining in the litigation and the risks to the Settlement Class and the potential for further delay, Named Plaintiffs and Class Counsel believe that the Final Settlement of $3,468,854.26 is a fair, reasonable and adequate result and in the best interests of all Settlement Class members. It completely eliminates the risk that there could be no additional recovery and advances a monetary payment to all eligible Settlement Class members by as much as several years. *See In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecom. Coop.,* 221 F.R.D. at 526 (C.D. Cal. 2004).

### B. The Amount Offered in Settlement

The amount offered in the Final Settlement, once approved, is $3,468,854.26. This amount is inclusive of attorneys' fees in the amount of $1,200,000 and administrative fees in the amount of $50,000. The balance of the Final Settlement, after accounting for attorneys' and administrative fees, is $2,218,854.26, which represents 100% of the insurance premiums paid by the Settlement Class to Raytheon, plus an additional $215,287.16 in post-judgment interest. Considering the uncertainties of trial and the expected duration of litigation, the amount offered in the Final Settlement is highly favorable.

The Final Settlement is clearly appropriate in light of the uncertainties of trial. *Mego Financial Corp.*, 213 F.3d at 459. In *Mego*, the Ninth Circuit approved a settlement that was 42% of estimated damages and stated that even using the objectors' damages estimates, a settlement of 14% would be fair. *Id. See also Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *In re Charles Schwab Corp. Sec. Litig.*, C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) (approving recoveries of between 23.4 and 35.9 percent of estimated damages: the funds "represent a substantial percentage of their requested damages. In other words, this is a good settlement for the class."); *In re Heritage Bond Litigation,* Nos. 02-ML-1475-DT(RCX), 2005 WL 1594389, at * 8 (C.D.Cal. June 10, 2005) (approving class action settlement and holding that after granting requested attorneys' fees, settlement fund that resulted in fund of 23% of the class' total net loss was "exceptional result").

### C. The Risk of Maintaining Class Action Status

The matter has been certified as a class action and is not subject to challenge. Indeed, Defendant participated in drafting the class definition order that was ultimately signed by the Court.

### D. The Extent of Discovery Completed, and Stage of the Proceedings

Given that the matter is fully adjudicated, discovery is complete as to all substantive issues on the merits of the case.  If, however, the Final Agreement was not approved, and the parties litigated the issue of attorneys' fees, discovery would ensue for the limited issue of the amount of attorneys' fees claimed by Class Counsel.

### E. The Experience and Views of Counsel

As set forth in the declaration of Robert Gregory submitted in support of Plaintiffs' Motion for Attorneys' Fees & Costs (Dkt. 179), Class Counsel is an experienced attorney and is well equipped to determine whether the proposed Settlement is fair and reasonable. Class Counsel's opinion that the settlement is fair

and reasonable is one of the factors that weigh in favor of final approval of the Settlement because of Class Counsel's familiarity with the litigation. *See In re Washington Pub. Power Supply Sys. Sec. Lit.*, 720 F.Supp. 1379, 1392 (D. Ariz. 1989) (citing *Officers for Justice*, 688 F.2d at 625). Courts may also attach a presumption of fairness, adequacy, and reasonableness to a class settlement reached in arm's-length negotiations among experienced, capable counsel after meaningful discovery. *Manual for Complex Litigation* (Third ed.) § 30.42 (1995).

Based on an exhaustive review of the relevant factors in this case, Class Counsel is satisfied that the Final Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class members.

### F. The Final Settlement Was Reached After Extensive and Adversarial Negotiations, and is Not a Product of Collusion

There was no collusion between the Parties in reaching the Final Settlement. As this Court is aware, this was a vigorously contested litigation from start to finish. The Final Settlement is the result of a high level, arm's length and hard fought adversarial negotiation and mediation process. Both Parties represented the interests of their clients vigorously and devoted a considerable amount of time, effort and resources to secure the terms of the Final Settlement before this Court. The arm's-length quality of the negotiations is further shown by the fact that the Parties engaged in mediation with Judge Bruce Macdonald, who was well informed on the history and merits of the case. An agreement was reached only after several attempts at mediation. A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 528 (*citing City P'ship C. v. Atlantic Acquisition Ltd P'ship*, 100 F.3d 1041, 1043 (1st Cir. 2006)).

### G. The Reaction of the Settlement Class is Favorable

The Settlement Class will receive all of the remedies provided in this Court's judgment of August 5, 2008, inclusive of: (1) full reimbursement of premiums paid to Raytheon by the Settlement Class since July 1, 2004; and (2) the ability to remain

in the Raytheon Retiree Health Benefits Plan, as set forth in the Settlement Agreement.  Moreover, the Settlement Class will receive post-judgment interest that accrued from the date of judgment until the date the parties signed the preliminary settlement.  The Settlement Class members have communicated directly with Class Counsel and/or the Class Representatives regarding the individual damages for each class member, and those damages were used to calculate the settlement amount.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Final Settlement Agreement be approved and that the Court enter the Final Order and Judgment in this case.

RESPECTFULLY SUBMITTED this __27th__ day of March, 2013.

LAW OFFICE OF ROBERT M. GREGORY, P.C.

By: ___s/ Robert M. Gregory_____
  Robert M. Gregory
  *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2013, I electronically filed the foregoing Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

ONE COPY of foregoing emailed this __27th__ day of March, 2013, to:

Daniel Bress
Kirkland & Ellis, LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
dbress@kirkland.com

Frederick A. Brodie, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, NY 10036-4039
*Attorneys for Defendant*

Ronald Stolkin, Esq.
Fennemore Craig, P.C.
3003 N. Central Avenue, Suite 2600
Phoenix, AZ 85012-2913
*Attorneys for Defendant*

Honorable David C. Bury
United States District Court
401 W. Washington Street
Phoenix, AZ  85003-2118


/s/Robert Gregory